UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JONATHAN BENAMOU,

                        Plaintiff,

        -against-

ADINA MILES,

                        Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 4592 (OEM) (CLP)

On August 29, 2024, plaintiff Jonathan Benamou, proceeding *pro se*, filed an Amended Complaint,[1] pursuant to 28 U.S.C. § 1332, against defendant Adina Miles, alleging claims of intentional infliction of emotional distress (First Cause of Action), and defamation (Second Cause of Action), stemming from a video that defendant allegedly posted online, falsely accusing plaintiff of threatening to kill his wife when she was pregnant. ("Compl."). Currently pending before this Court on referral from the Honorable Orelia E. Merchant (Electronic Orders dated May 13, 2025 and May 29, 2025), are defendant's four motions to dismiss for failure to comply with court orders and for failure to provide discovery. (ECF Nos. 53, 55, 57, and 59).

For the reasons set forth below, it is respectfully recommended that the district court: (1) deny defendant's motion to dismiss without prejudice; (2) Order plaintiff to pay reasonable attorney's fees necessitated by his failure to comply with his discovery obligations; (3) Order the

---

[1] Plaintiff originally commenced this action on June 21, 2024 (ECF No. 1). On August 26, 2024, the district court dismissed the action finding that diversity jurisdiction was lacking because plaintiff had not sufficiently alleged claims that would suggest "a reasonable probability" that plaintiff would be able to recover in excess of $75,000 to meet the statutory requirement. (ECF No. 8 at 3). In the Amended Complaint, plaintiff added allegations that he has experienced significant anxiety and trauma, "expected to cost hundreds of dollars" in ongoing therapy. (Am. Compl. ¶ 20). He also alleges that he has lost job opportunities as a direct result of defendant's false accusations for which he would have earned "over $200,000." (Id. ¶ 26). Given that the district court previously found that plaintiff had adequately alleged diversity of citizenship between the parties, and now asserts specific claims for damages exceeding $75,000, the Court finds there is jurisdiction over the plaintiff's claims.

requests for admission 1-33, 35-55, and 68-125 admitted; and (4) Order that plaintiff is precluded from offering into evidence any documents or other tangible items as proof of his claims or his alleged damages.

## FACTUAL BACKGROUND

In his Amended Complaint, plaintiff alleges that defendant engaged in an "intentional malicious extortion conspiracy," stemming from defendant Miles' alleged use of her "highly followed and popular" Instagram account to organize a "protest/riot" in Kiryas Yoel, N.Y., designed to coerce an individual to grant his wife a Get, a Jewish divorce. (Am. Compl. ¶¶ 1, 9). It is alleged that many members of the ultra-Orthodox Hassidic Jewish community attended the protest and counter protested against defendant and her comrades. (Id. ¶ 10). According to plaintiff, defendant spotted him and began recording herself on her phone, "hurling insults and false accusations" against plaintiff, including claiming that he had threatened to kill his wife when she was pregnant. (Id. ¶¶ 12, 13). Plaintiff further alleges that defendant then posted the recorded video on Instagram, adding a feature that spelled out the words she had spoken in text format. (Id. ¶ 15).

In his first cause of action, plaintiff alleges that as a result of the post, he received "unsolicited communications" sent to harass and extort him into granting his estranged wife a Jewish divorce. (Id. ¶ 17). He claims to have been "accosted both in person and through various interstate communication methods, including phone calls and text messages" as a result of defendant's post. (Id. ¶ 18). He claims that defendant posted the video intentionally to defame him and provoke reactions from her followers to coerce men into granting Jewish divorces, otherwise known as 'Gittin,' or a 'Get' in the singular. (Id. ¶ 19). In his second cause of action,

2

plaintiff denies ever threatening to kill his wife while she was pregnant and that defendant's slanderous and defamatory accusation was made to convince people to ostracize him and to not employ him. (Id. ¶¶ 23-25).

A. The May 6, 2025 Letter Motion to Dismiss

On May 6, 2025, defendant filed a letter motion seeking to have the court dismiss the action based on plaintiff's failure to comply with discovery orders and his lack of responses to defendant's motion for admissions. (ECF No. 53). Defendant cites the district court's April 3, 2025 Order, compelling plaintiff to provide his responses to defendant's discovery requests by May 3, 2025. (Id. at 1). The court reiterated that direction in a subsequent Order dated April 9, 2025, in which the court not only Ordered plaintiff to respond by May 3, 2024, but also warned that "Failure to comply may result in dismissal of this case." (Id.)

In her May 6, 2025 letter, defendant indicates that plaintiff had not responded to defendant's discovery requests by the original November 18, 2024 deadline or the Court's extended May 3, 2025 deadline, and, as a result, "all objections are waived and all requests for admissions are automatically deemed admitted," pursuant to Fed. R. Civ. P. 36. (ECF No. 53 at 1–2). Based on these admissions, defendant argues that plaintiff has no evidence to sustain his burden of proof with respect to the claims in the case. (Id. at 2).

In response to the May 6, 2025 letter, plaintiff submitted a letter, also dated May 6, 2025, pleading for leniency, citing the fact that the requests were voluminous, containing over 100 individual requests; the return date of May 2 fell on a Saturday – the Sabbath, and it took a significant amount of time for plaintiff, "an unrepresented litigant without legal training or resources" to prepare responses. (ECF No. 54 at 1). In addition to attaching his responses to the

3

discovery requests to his response letter, plaintiff represents that he was submitting responses that day – May 6. (Id.)

 B. The May 7, 2025 Letter

On May 7, 2025, defendant submitted a second letter seeking dismissal.[2] (ECF No. 55). In the letter, defendant noted that despite being granted ample time, plaintiff failed to respond by May 3, 2025 as directed, and, even accounting for the Sabbath, plaintiff did not file his responses on May 5, 2025, the next business day. (Id. at 1 (citing Fed. R. Civ. P. 36)). Defendant further argues that despite the court's explicit warning, plaintiff failed to timely respond in accordance with the court's Order. (Id.)

Defendant further argued that even though the Court has discretion to permit late responses to Requests for Admissions, here plaintiff never asked for an extension, never filed a motion seeking relief, and never explained his noncompliance. (Id.) Thus, defendant contends that all 125 Requests for Admission should be deemed admitted. If admitted, these admissions demonstrate that plaintiff has no evidence to support his claims and therefore, dismissal of the Amended Complaint is warranted. (Id.)

According to defendant, plaintiff ignored certain Requests for Admission, neither offering legitimate denials nor raising proper objections. (Id. at 2). To the extent plaintiff responded, defendant describes the responses as "vague, evasive or irrelevant." (Id.) Citing specific Requests for Admission, defendant contends that by not responding, plaintiff has, by operation of

---

[2] Before this Court received defendant's May 7, 2025 letter, the Court issued an Order based on plaintiff's representations that he had provided responses indicating that it looked like the issues had been resolved and setting a status conference for May 20, 2025. (Order dated May 7, 2025). Defendant then filed a third letter, submitting that plaintiff had not cured the prior non-compliance issues and asking the Court to reconsider its Order. (ECF No. 57). The defendant also indicated that the May 20, 2025 date for the status conference presented a scheduling conflict since counsel was out of time on that date. (Id.) This Court then granted the request to adjourn the conference and held a hearing on the motions instead with the parties on May 27, 2025. The motions were referred to the undersigned on May 13, 2025.

4

law, admitted that he: 1) has no evidence supporting his allegations of extortion, emotional distress, defamation or damages (RFA Nos. 1-3, 29-32), nor has he provided any evidence to support his claim of lost employment opportunities (RFA Nos. 30-32); 2) has failed to provide support obligations to his wife in the amount of $231,750; and 3) to being a Get refuser, to Domestic Violence allegations, to Contempt of the rabbinical court, known as the Bais Din, to receiving persistent warnings from his community and refusal to comply with rabbinical rulings. (RFA Nos. 35-41, 38-47, 68-77; 78-84, 86-88, 92-93, and 97-104). Finally, with respect to the remaining discovery responses, defendant notes that not a single document was produced by plaintiff to support his claims, confirming that "he lacks even the most minimal factual support for the allegations" in his Complaint. (ECF No. 55 at 2). Defendant contends that dismissal and sanctions are warranted as a result.

C.  The May 28, 2025 Letter

Following the conference, defendant then submitted another post-hearing summary letter, dated May 28, 2025, reiterating the request to dismiss the case for lack of evidence. (ECF No. 59). Defendant argues that it is clear that plaintiff has not only failed to comply with discovery, but he has no documents or evidence to support his claims. (Id.) At the hearing before this Court, plaintiff admitted in response to the Court's questions, that he had no video evidence to support his claim, stating that "most of these things happen[…]orally [and]not in any way [where] you could…track or [you catch it] on video." (ECF No. 59 at 4 (alterations added to match original recording)). He also conceded that he had no evidence supporting his damages claim and no documents to show job applications that he had submitted but that had been turned down. (Id.) Defendant argues that apart from his failure to provide timely discovery responses, plaintiff's statements in court indicate that he has no evidence to support his claim or to

5

substantiate his damages. (ECF No. 59 at 4). "He has submitted no job applications, identified no written employment rejections, and produced no records from employers, physicians, or mental health professionals. He conceded that there are no police reports, no screenshots, no emails, no messages, no texts, no images, no metadata – nothing that would pass even the most basic threshold of admissibility." (Id.)

With respect to plaintiff's "discovery misconduct," defendant argues that by operation of Federal Rule of Civil Procedure 36(a)(3), plaintiff's failure to produce responses to the Requests for Admission by the May 3, 2025 deadline results in each Request being deemed admitted. (Id.) Even if his belated responses are considered, they were "substantively inadequate and made in bad faith." (Id.) Defendant accuses plaintiff of blaming others rather than accepting responsibility for his lack of evidence in support of his claims, citing plaintiff's claims that his estranged wife falsely accused him of abuse and orchestrated multiple false arrests, his rejection of the rabbinical court's rulings as a "fake [and] illegitimate rabbinical court," and his assertions that the police arrested the wrong person and failed to prosecute those who harmed him – all "unsupported assertions" with no corroborating evidence. (Id. at 5).

As a result, defendant seeks an Order: 1) dismissing the action with prejudice; 2) deeming all 125 Requests for Admission admitted; and 3) imposing monetary sanctions under Rule 37(c)(2) based on the need for defendant to incur significant and unnecessary legal fees and costs. (Id. at 6).

D. Plaintiff's Response to the May 28 Letter

In response, plaintiff submitted a letter dated May 28, 2025, arguing that plaintiff's most recent letter of May 28, 2025 was submitted in violation of this Court's directive at the hearing that no further letters or filings were to be made unless directed to do so by the Court. (ECF No.

6

60 at 1). Plaintiff asserts that there is "a coordinated, well-funded network of individuals and organizations that support and finance Ms. Miles and her legal defense," who "use this litigation as a tool of intimidation and suppression." (Id.)

He defends his discovery production by arguing that it "was submitted just a few days after the deadline," and it included links to social media posts by defendant that are central evidence in support of his defamation claims. (Id. at 2). He also contends that he has submitted a list of witnesses prepared to testify on his behalf as to his reputational and emotional harm. (Id.) Plaintiff seeks an "immediate order" directing Ms. Miles to remove all defamatory content from the internet, as the ongoing display of these posts is causing him "irreparable reputational and psychological harm." (Id.)

Plaintiff asks the Court to: 1) disregard defendant's letter of May 28, 2025 as "procedurally improper and in direct violation of the Court's instruction;" 2) direct counsel to refrain from submitting further unsolicited letters without leave of court; and 3) grant emergency relief ordering defendant to remove all defamatory social media content referenced in plaintiff's discovery responses.

## DISCUSSION

I. Legal Standards

A. Rule 37 Sanctions

It is clear that sanctions may be imposed upon a party or counsel who deliberately fails to comply with a court order. See, e.g., Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d 371, 386 (2d Cir. 1981) (explaining that "[a] federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation

7

practices") (citing cases); Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981) (upholding a contempt order for violating a discovery order); see also Prelvukaj v. Naselli, No. 19 CV 5939, 2023 WL 3570659, at *4 (E.D.N.Y. May 18, 2023) (explaining that " '[w]hether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses, and for the spoliation of evidence' ") (quoting Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999)).  Rule 37 of the Federal Rules of Civil Procedure is the primary, though not the exclusive, mechanism for enforcing a court's discovery orders.  See, e.g., World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012) (explaining that "Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct"); Baez v. City of New York, No. 16 CV 6340, 2019 WL 2249893, at *2 (E.D.N.Y. May 24, 2019) (similar).

Rule 37 provides in relevant part that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  In Update Art, Inc. v. Modiin Publ'g, Ltd., the Second Circuit described the three purposes behind sanctions under Rule 37:

> First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

843 F.2d 67, 71 (2d Cir. 1988) (citing National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639 (1976) (per curiam), and Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)); see also Southern New Eng. Tel. Co. v.

8

Global NAPs Inc., 624 F.3d 123, 149 (2d Cir. 2010) (quoting the same provision from Update Art, Inc. v. Modiin Pub'g, Ltd., 843 F.2d at 71). As the court in Baba v. Japan Travel Bureau Int'l, Inc., noted: " '[A]ll litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation they . . . must suffer the consequences of their actions.' " 111 F.3d 2, 5 (2d Cir. 1997) (quoting McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)).

An order requiring a party to comply with its discovery obligations or with another party's discovery requests is a necessary predicate to sanctions under Rule 37(b). See, e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991) (explaining that "[p]rovided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order"); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, No. 16 CV 1318, 2017 WL 3671036, at *18 (S.D.N.Y. July 18, 2017) (noting that "[a] court order directing compliance with discovery requests is a required predicate to Rule 37(b) sanctions"), report and recommendation adopted by 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). An order enforceable under Rule 37(b) need not, however, have been issued under a particular rule, so long as its effect was to require a party "to provide or permit discovery." See Fed. R. Civ. P. 37(b)(2)(A); Daval Steel Prods. v. M/ V Fakredine, 951 F.2d at 1363–64 (finding sanctions may be imposed pursuant to Rule 37 even though the court's order was not issued pursuant to Rule 37). An order need not be written to be enforceable under the Rule. See Penthouse Int'l, Ltd. v. Playboy Enters., Inc., 663 F.2d at 388 (citing cases); see also Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *18 (explaining that "[t]he order disobeyed can take a variety of forms, and need not be written") (citing cases). Even in the absence of a court order, Rule 37

9

provides for sanctions where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1).

For violations of such an order or a discovery obligation, Rule 37 lists seven possible sanctions, including "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," and "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi), (vii). In addition, the Rule provides that the court may issue an order that certain "designated facts be taken as established for purposes of the action, as the prevailing party claims," Fed. R. Civ. P. 37(b)(2)(A)(i), cf. Prelvukaj v. Naselli, 2023 WL 3570659, at *7 (ordering "an instruction be given at trial . . . that had the hours-of-service logs been produced, they would indicate that [defendant] drove more than eleven hours by the time of the alleged accident"), or the court may issue an order "prohibiting the disobedient party from. . . introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); see, e.g., Figueroa v. W.M. Barr & Co., Inc., No. 18 CV 11187, 2020 WL 996473, at *4 (S.D.N.Y. Mar. 2, 2020) (precluding plaintiff from introducing or relying on an expert report in response to a summary judgment motion or at trial).

In lieu of or in addition to these sanctions, the Rule requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Indeed, courts have awarded attorney's fees and costs where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default. See Seena Int'l, Inc. v. One Step Up,

10

Ltd., No. 15 CV 1095, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) (explaining that with respect to discovery sanctions, " 'the mildest' sanction 'is an order to reimburse the opposing party for expenses caused by the failure to cooperate' " and that "[m]onetary sanctions are the norm, not the exception," and ordering plaintiff to reimburse defendants' fees and expenses incurred since the discovery deadline in getting plaintiff to produce documents) (quoting Cine Forty-Second St. Theatre Co. v. Allied Artists Pictures Corp., 602 F.2d at 1066); see also Excellent Home Care Servs., LLC v. FGA, Inc., No. 13 CV 5390, 2017 WL 9732082, at *8–12 (E.D.N.Y. June 5, 2017) (ordering plaintiff to re-produce and produce certain documents, respond to interrogatories, and pay defendants' attorney's fees where defendant sought sanctions which included dismissal). Attorney's fees can be assessed against the non-compliant party or their counsel. Roadway Express, Inc. v. Piper, 447 U.S. 752, 763–64 (1980) (holding "[b]oth Parties and counsel may be held personally liable for expenses, 'including attorney's fees,' caused by the failure to comply with discovery orders"); see also Joint Stock Co. Channel One Russ., Worldwide v. Infomir LLC, 2017 WL 3671036, at *20 (explaining that "[t]he [c]ourt has wide discretion to apportion Rule 37 monetary sanctions between a party and its counsel").

 Rule 37's listed sanctions are non-exclusive, and the Rule explicitly contemplates that courts will order other sanctions so long as they are " 'just' " and " 'commensurate with the noncompliance.' " See Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC, 2017 WL 3671036, at *19, 21 (quoting Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 140 (2d Cir. 2007)). "The court's inquiry in deciding whether to impose less severe sanctions, such as fines and cost-shifting, focuses primarily on the misconduct of the party to be sanctioned." Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo

11

Flooring, Inc., No. 18 CV 1471, 2020 WL 1172635, at *6 (E.D.N.Y. Feb. 20, 2020), report and recommendation adopted, 2020 WL 1166616 (E.D.N.Y. Mar. 11, 2020).

In evaluating whether to impose more serious discovery sanctions, courts consider the following non-exclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." Bhagwanani v. Brown, 665 F. App'x 41, 42–43 (2d Cir. 2016) (summary order) (alteration in original) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)); Southern New Eng. Tel. Co. v. Global NAPs Inc., 624 F.3d at 144. Significant prejudice to the moving party may counsel for a harsher sanction, but a lack of prejudice to the moving party does not counsel against the imposition of a sanction. Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc., 2020 WL 1172635, at *6.

B. Rule 36 Automatic Admission

Rule 36 of the Federal Rules of Civil Procedure governs requests for admission. The Rule provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Thus, a court need not deem the requests admitted because admission is automatically triggered by a failure to timely respond. See DeNicola v. Frontline Asset Strategies, 279 F.R.D. 214, 215 (E.D.N.Y. 2012); Stabile v. United Recovery Servs., L.P., No. 11 CV 1152, 2011 WL 6448189, at *2 (E.D.N.Y. Dec. 22, 2011).

Rule 36 does give a court some discretion to make exceptions to the automatic admission rule.  See Beberaggi v. New York City Trans. Auth., No. 93 CV 1737, 1994 WL 18556, at *2 (S.D.N.Y. Jan. 19, 1994).  Rule 36(b) provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended," which is permitted where "it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Thus, courts have found exemption from the automatic admission rule where automatic admission would prevent the parties from ever reaching the merits of the case or where automatic admission would defeat the admitting party's claims.  See Amerisource Corp. v. Rx USA Int'l, Inc., No. 02 CV 2514, 2005 WL 8156993, at *2 (E.D.N.Y. Feb. 22, 2005).

However, "the Second Circuit has signaled that the trial court should keep in mind the underlying policy of Rule 36 'to narrow issues and speed the resolution of claims.'" Beberaggi v. New York City Trans. Auth., 1994 WL 18556, at *3 (quoting Donovan v. Carls Drug Co., Inc., 703 F.3d 650, 652 (2d Cir. 1983)).  "Thus, relief from an untimely service of responses may be granted 'only when (1) the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result,' and even if both of these criteria is satisfied, 'the court is not required to make an exception to Rule 36.'" Id. (emphasis in original) (quoting Donovan v. Carls Drug Co., Inc., 703 F.3d at 652).

Not all requests propounded under Rule 36 are proper, though.  Instead, "[e]ach request for admissions must be direct, simple, and 'limited to singular relevant facts.'" United States v. Veeraswamy, 347 F.R.D. 591, 599 (E.D.N.Y. Nov. 13, 2024) (quoting Richard v. Dignean, 332 F.R.D. 450, 461 (W.D.N.Y. 2019)).  A request will not be deemed admitted when it is divorced

13

from the facts and circumstances of the case, even if not responded to. See Cement and Concrete Workers Dist. Council Welfare Fund v. Manny P Concrete Co., Inc., No. 19 CV 2145, 2023 WL 3948751, at *6 (E.D.N.Y. June 12, 2023) (finding that improper requests for admission "will not be deemed admitted if not responded to") (citation omitted) aff'd 145 F.4th 204 (2d Cir. 2025). See also Rodriguez v. NNR Glob. Logistics USA Inc., No. 14 CV 1766, 2017 WL 11510163, at *5 (E.D.N.Y. Mar. 31, 2017). For example, although the rule permits inquiry into all discoverable information under Rule 26(b), including matters of facts and the application of law to those facts, it does not extend to conclusions of law. Cement and Concrete Workers Dist. Council Welfare Fund v. Manny P Concrete Co., Inc., 2023 WL 3948751, at *6 (citing Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 432 (S.D.N.Y. 2012) ("Rule 36, by its express terms, embraces only requests for admissions of fact or of the application of law to fact…To force the defendant to 'admit' [legal conclusions] would only frustrate the purposes for which Rule 36 was drafted" (quotations omitted))).

II. <u>Analysis</u>

Defendant seeks dismissal of the action – clearly one of the more serious sanctions that can be imposed for noncompliance with a discovery order from the court. As a preliminary matter, there is no question that on April 3, 2025, the district court issued a clear order directing plaintiff to serve responses to defendant's discovery requests by May 3, 2025. That order was reiterated by the court in a second order issued on April 9, 2025, with the explicit warning that "Failure to comply may result in dismissal of this case." Defendant is correct that plaintiff, who is proceeding *pro se*, never sought an extension of that deadline nor advised the court that the response date fell on a Saturday, which plaintiff observes as the Sabbath. However, plaintiff did

serve responses on the following Tuesday, May 6, 2025, along with a letter explaining his failure to respond by the deadline. While one might fault plaintiff for not realizing sooner that his responses were due on a date when he would be unable to comply, given plaintiff's non-represented status, and considering the duration of the period of noncompliance and the reason for noncompliance, dismissal of plaintiff's entire case as a result of this two-day delay seems unduly harsh in light of the absence of true prejudice to the defendant in receiving the responses on a Tuesday rather than on the Monday which would normally be the default deadline for a discovery response due on a weekend.

However, the Court's analysis does not end there because, as defendant notes, many of plaintiff's discovery responses, apart from being late, were deficient in other respects. Most notably defendant contends that plaintiff provided no documents to support his claim that as a result of plaintiff's post, he has been "accosted in person" and through "interstate communications methods, including phone calls and text messages." (Am. Compl. ¶ 18). Nor has plaintiff provided any documentary evidence supporting his allegation that he lost over $200,000 in earnings because he could not obtain employment as a result of defendant's post. (Am. Compl. ¶ 26). Defendant notes that plaintiff has provided no job applications or written employment rejections, nor has he produced records from physicians, or mental health professionals that could substantiate his claim that he will incur "hundreds of dollars" in ongoing therapy to deal with his emotional distress stemming from these incidents. (Id. ¶ 20). Indeed, plaintiff has conceded that he has no documentary evidence as to his reputational and emotional harm. (ECF No. 59 at 2–4)

Defendant also contends that dismissal or, in the alternative, an Order deeming admitted all Requests for Admission because of plaintiff's failure to respond adequately or at all in some

15

cases to the requests, is appropriate. (ECF Nos. 53 and 55). Given that the Requests for Admission were originally served on plaintiff on November 18, 2024, and he failed to respond to them by the date specified in the requests and the Court's extended due date, by operation of the Federal Rules, the Court finds that some of the requests are deemed admitted. This sanction is bolstered by the fact that plaintiff was warned that his failure to comply with the discovery order could result in sanctions or dismissal and, even had he not been warned, failure to comply with the discovery deadline could result in automatic admissions under Rule 36.

However, as discussed, improper requests are not automatically admitted. See infra at 13. Several requests improperly seek legal conclusions (Request Nos. 56-67); one request is seemingly an attempt to force plaintiff into a contract to pay defendant's counsel fees (Request No. 34). These requests are clearly improper and would have been struck if objected to, and the Court declines to deem them admitted. While some of the other requests are of questionable relevance, the remaining requests are deemed admitted.

While defendant contends that plaintiff's admission to many of the basic facts in the case justifies dismissal, the Court declines to recommend dismissal as a sanction for plaintiff's lack of responses to the Requests For Admission. See Hafif v. Mansour, No. 22 CV 1199, 2024 WL 5715911, at *6 (E.D.N.Y. Jan. 2, 2024) (denying dismissal for violation of a discovery order due to "the strong public policy in providing leniency to pro se litigants" even after warning the pro se litigant of the possibility of sanctions and dismissal) report and recommendation adopted by Electronic Order dated 3/28/2024; City of Merchandise Inc. v. Tian Tian Trading Inc., No. 19 CV 9649, 2022 WL 827843, at *4 (S.D.N.Y. Feb. 28, 2022) (providing pro se litigant with an additional opportunity to show cause why they should not be sanctioned for failure to comply with a discovery order); Willams v. NYS Off. of Mental Health, No. 10 CV 1022, 2015 WL

4624226, at *6 (E.D.N.Y. Aug. 3, 2015) (finding dismissal against a pro se litigant for violating discovery orders was "excessive" when lesser sanctions would "suffice to allow the parties to litigate the issues on the merits while preventing [the pro se party] from gaining an unfair advantage from his failure to provide discovery"), aff'd 2015 WL 13948431 (E.D.N.Y. Sept. 28, 2015); cf. Agiwal v. Mid Island Mortg. Corp., 06 CV 1919, 2007 WL 9753110, at *2 (E.D.N.Y. May 15, 2007) (finding that, once a pro se litigant has been warned of the possibility of dismissal, "[t]he severe sanction of dismissal…is available even against pro se litigants" for violating a discovery order "because 'while pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders") (alteration in original) (quoting Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994) and McDonald v. Head Crim. Ct. Supervisor Off., 850 F.2d 121, 124 (2d Cir. 1988)), aff'd 555 F.3d 298 (2d Cir. 2009).

      Instead, the Court finds that the lesser sanction of deeming admitted Requests for Admission 1-33, 35-55, and 68-125, Fed. R. Civ. P. 37(b)(2)(A)(i), and issuing an Order precluding plaintiff from offering into evidence any documents or other tangible items as proof of his claims or his alleged damages, Fed. R. Civ. P. 37(b)(2)(A)(ii), provides an adequate remedy for plaintiff's failure to provide discovery. In addition, the Court finds that an Order requiring plaintiff to pay "the reasonable expenses, including attorney's fees," necessitated by his failure to comply with his discovery obligations is warranted. Fed. R. Civ. P. 37(b)(2)(C). However, the Court agrees with plaintiff that defendant's post-hearing letter of May 28, 2025 was not only unnecessary but in violation of this Court's instruction that the parties were not to file any additional papers. Thus, the Court declines to order plaintiff to pay fees and costs related to the May 28, 2025 letter.

17

Finally, to the extent that defendant argues that plaintiff's case should be dismissed for lack of evidence, the Court respectfully recommends that that is a motion for summary judgment properly addressed to the district court and, as noted, not an appropriate sanction for plaintiff's discovery failures.

III.   Other Issues

In his most recent letter to the Court dated May 28, 2025, plaintiff seeks an Order directing defendant's counsel to refrain from submitting further unsolicited letters without leave of court and granting emergency relief ordering defendant to remove all defamatory social media content from her social media accounts. As neither of these motions have been briefed or responded to, the Court denies them at this time without prejudice to renew.

CONCLUSION

For the reasons stated above, the Court respectfully recommends that the district court: (1) deny defendant's motion to dismiss without prejudice; (2) Order plaintiff to pay reasonable attorney's fees necessitated by his failure to comply with his discovery obligations; (3) Order the requests for admission 1-33, 35-55, and 68-125 admitted; and (4) Order that plaintiff is precluded from offering into evidence any documents or other tangible items as proof of his claims or his alleged damages.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to

18

appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
September 26, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York